UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTONIO BEY and
RENEE SMITH-BEY,

                                                  Case No. 2:14-cv-13723

                        Plaintiffs,               Judge David M. Lawson

v.                                                Magistrate Judge Anthony P. Patti

LNV CORPORATION and
MGC MORTGAGE, INC.,

                        Defendants.

## REPORT AND RECOMMENDATION REGARDING DEFENDANTS' MOTIONS TO DISMISS (DE 9, DE 18)

**I.      RECOMMENDATION:** The Court should (1) deny as moot Defendants'

November 6, 2014 motion (DE 9) to dismiss Plaintiff's original complaint (DE 1)

pursuant to Fed. R. Civ. P. 12(b)(6) but (2) grant Defendants' November 25, 2014

motion (DE 18) to dismiss Plaintiffs' first amended complaint (DE 15), pursuant to

Fed. R. Civ. P. 12(b)(6).

**II.     REPORT:**

### A.      Factual Background

Antonio Bey attests that he purchased his home at 32422 Bondie Drive,

Brownstown Township, Michigan 48173 during April 2005.  DE 1 at 10 ¶ 5.  It

1

appears this occurred on March 29, 2005 in conjunction with a warranty deed and

two mortgages – one for $240,000 and the other for $60,000 - which were later

discharged on July 10, 2006 and August 1, 2006.  *See*

www.waynecountylandrecords.com.

Meanwhile, on June 19, 2006, Bey quit-claimed the deed to himself and his

wife, Renee Smith-Bey.  *See* www.waynecountylandrecords.com.  On that same

day, borrowers Antonio Rafael Bey and Renee Smith-Bey (the Beys) executed a

mortgage on the property in favor of mortgagee Mortgage Electronic Registration

Systems, Inc. (MERS).  DE 18-2 at 2-14; *see also* DE 18-2 at 15-20.  The

mortgage was executed in association with a $284,000 adjustable rate note with

lender Decision One Mortgage Company, L.L.C.  DE 18-2 at 21-23; *see also* DE

18-2 at 24-25.[1]

Eventually, on March 10, 2008, MERS assigned the mortgage to LNV

Corporation.  Once the assignment was recorded, it was to be returned to MGC

Mortgage, Inc., an entity which shared an address with LNV.  *See* DE 18-3.

---

[1] It also appears that, on the same day, the Beys granted another mortgage to
Decision One Mortgage Co. for consideration of $71,000.00.  *See*
www.waynecountylandrecords.com.  Perhaps this is the basis for the Beys'
allegation that they "have spent $425,000 vested in and from maintaining their
home[,]" DE 15 ¶ 58, and their response that they "have vested interest in their
home that exceeds $350,000."  DE 20 at 5 ¶ VII.

Although the timeline is not clear, Antonio Bey attests that he, at some point, "started the loan modification process."  DE 1 at 11 ¶ 13.  For example, he claims to have worked with GMAC (DE 1 at 11 ¶¶ 15-23) and MGC (DE 1 at 11 ¶¶ 27-51).  In addition, Antonio Bey attests that he went to an attorney in May 2013 and that the attorney "put a loan modification in on [his] behalf."  *See* DE 1 at 11 ¶¶ 31-32.

Antonio Bey attests that "[t]he home was put into foreclosure while working on the loan modification."  DE 1 at 11 ¶ 33.  During January and February 2014, notices of a February 27, 2014 foreclosure sale were published in the *Detroit Legal News*.  DE 18-4 at 4.  On January 29, 2014, notice of a February 27, 2014 foreclosure sale was posted at the premises.  DE 18-4 at 5.  These notices list Trott & Trott, P.C. as the servicer's attorneys.  Mr. Bey attests to having had some contact with Trott & Trott.  DE 1 at 12 ¶¶ 52-54.

It appears that the sale was adjourned from February 27, 2014 to March 27, 2014.  *See* DE 18-4 at 2.  The Sheriff's Deed on Mortgage Sale is dated March 27, 2014 and signed by Deputy Sheriff La Shana Cooper.  DE 18-4 at 2-3; *see also* DE 18-4 at 6.  Pursuant to the Affidavit of Purchaser, the redemption date was September 27, 2014 and the amount necessary to redeem the property was $185,200.00.  DE 18-4 at 7.

**B.     Procedural History**[2]

On September 25, 2014, two days before the date of redemption, the Beys

filed the instant lawsuit against "LVN Corporation/MGC Services."  DE 1 at 1-9;

*see also* DE 1 at 10-12 (Affidavit).  The complaint was only signed by Plaintiff

Antonio Bey.  DE 1 at 9.  Plaintiffs seek declaratory, injunctive and compensatory

relief.  DE 1 at 2-3, 9.[3]

LNV Corporation and MGC Mortgage, Inc. appeared on October 30, 2014.

DE 7, DE 8.  On November 6, 2014, Defendants filed a motion (DE 9) to dismiss

---

[2] The Court is aware that, on October 9, 2014, LNV Corporation filed a Complaint
to Recover Possession of Property in state court (Case No. 14-B-3148, 33rd District
Court, Woodhaven).  *See* http://d33.courts.mi.gov, "Name Lookup".  On October
16, 2014, the Beys removed the case to this Court.  *See* Case No. 2:14-cv-13990-
DML-RSW (DE 1 at 3-5).  However, on December 15, 2014, Judge Lawson
entered an opinion and order remanding the case to state court.  *See* Case No. 2:14-
cv-13990-DML-RSW (DE 16).  On January 7, 2015, an order was entered in the
state court case which provided that monthly escrow payments of $2,000 were due
on the second of each month, beginning February 2, 2015.  The register of actions
in that case, of which I take judicial notice, indicates that four (4) such payments
have been made.  The latest of these payments was made on May 12, 2015.  Thus,
it appears that the state court litigation is ongoing.

[3] This report does not recognize La Shana Cooper, the Wayne County Deputy
Sheriff who signed the March 27, 2014 Sheriff's Deed (DE 18-4 at 2), as a
defendant.  While the undersigned notes that a summons was issued for Cooper
(DE 2) and that a summons and complaint were apparently served upon Cooper
(DE 4), Cooper was not listed in the caption of either complaint (*see* DE 1 at 1, DE
15 at 1) as required by Fed. R. Civ. P. 10(a) ("The title of the complaint must name
all the parties[.]").  Also, the undersigned notes that neither of the complaints' lists
of "Jurisdiction and Parties" lists Cooper as a defendant (*see* DE 1 ¶¶ 1-5, DE 15
¶¶ 1-5), nor are any allegations directed against her in the pleadings.

Plaintiff's complaint (DE 1) pursuant to Fed. R. Civ. P. 12(b)(6).  Plaintiffs'
response was due on December 15, 2014.  DE 10.

Plaintiffs filed an amended complaint against LNV Corporation/MGC
Mortgage, Inc., on November 12, 2014.  DE 15 at 1-9.  The amended complaint
appears to be identical to the original complaint, except that the case caption
corrects the spelling of Defendants' names.  *Compare* DE 1 at 1, DE 15 at 1.  Also,
the amended complaint is signed by both Plaintiffs.  DE 15 at 9.

On November 14, 2014, Magistrate Judge Whalen entered an order (DE 17)
requiring an answer to the amended complaint (DE 15) or an amended motion to
dismiss to be filed by December 3, 2014.  On November 25, 2014, Defendants
LNV Corporation and MGC Mortgage, Inc. filed a motion (DE 18) to dismiss
Plaintiffs' first amended complaint (DE 15) pursuant to Fed. R. Civ. P. 12(b)(6).
Pursuant to the Court's November 25, 2014 order (DE 19), the response was due
on December 30, 2014.

On December 2, 2014, Plaintiffs filed responses.  DE 20, DE 21.
Defendants filed a reply on December 17, 2014.  DE 22.  On December 22, 2014,

Plaintiffs filed another response, essentially an impermissible sur-reply, which I have decided to consider, rather than strike.  DE 23.[4]

### C.   Standard of Review

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action"). Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "The plausibility of an inference depends on a host of considerations, including common sense and the strength of

---

[4] When this case was filed, it was assigned to Judge Lawson and Magistrate Judge Whalen.  Judge Lawson referred the case to Magistrate Judge Whalen for pretrial matters.  DE 6.  However, on January 13, 2014, the case was reassigned to me.  DE 28.

competing explanations for the defendant's conduct." *16630 Southfield Ltd.,*

*P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards

than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520

(1972). However, even in pleadings drafted by *pro se* parties, "'courts should not

have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482

F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594

(6th Cir. 1989)).

> **D.    E.D. Mich. LR 7.1(a) ("Seeking Concurrence in Motions and Requests.")**

In this Court, the Local Rule governing motion practice provides, in part, as

follows:

> **(a)    Seeking Concurrence in Motions and Requests.**
>
> > (1)   The movant must ascertain whether the contemplated motion, or request under Federal Rule of Civil Procedure 6(b)(1)(A), will be opposed. If the movant obtains concurrence, the parties or other persons involved may make the subject matter of the contemplated motion or request a matter of record by stipulated order.
> >
> > (2)   If concurrence is not obtained, the motion or request must state:
> >
> > > (A)   there was a conference between attorneys or unrepresented parties and other persons entitled to be heard on the motion in which the movant explained the nature of the motion or request and its legal basis and

requested but did not obtain concurrence in the relief
sought; or

(B)   despite reasonable efforts specified in the motion or
request, the movant was unable to conduct a conference.

(3) The court may tax costs for unreasonable withholding of
consent.

E.D. Mich. LR 7.1(a).

In each of Defendants' dispositive motions, they make statements regarding
seeking concurrence – in the first case by leaving a telephone message on October
30, 2014 and in the second case by speaking with Plaintiff Antonio Bey on
November 24, 2014.  DE 9 at 2, DE 18 at 2.  In their December 2, 2014 response,
Plaintiffs allege the message was threatening and a form of intimidation and the
phone conversation was likewise menacing.  DE 21 at 2.

In Plaintiffs' opinion, "[t]here was no mention to any form of options being
explored or any amicable means of resolving any issues that may benefit my
family."  DE 21 at 2.  Among other things, Defendants' December 17, 2014 reply
states, "Plaintiffs undermine their own claims of oppression and fear by drastically
embellishing upon routine events."  DE 22 at 2.

Having considered the motion papers in this case, the Court need not engage
in an in depth discussion of whether Defendants' October 30, 2014 and November
24, 2014 attempts at concurrence satisfy E.D. Mich. LR 7.1(a).  This is so, because
Plaintiffs do not dispute Defendants' representations that a message was left and a

conversation was had, and, having read Plaintiffs' three responses (DE 20, 21 & 23), it is clear to this Court that Plaintiffs were not going to agree to the relief sought by Defendants in their motions (DE 9, DE 18). Moreover, having reviewed multiple documents filed in this Court by the Beys, I agree that there is a tendency towards "drastically embellishing upon routine events." DE 22 at 2.[5]

### E. The Court Should Deny as Moot Defendants' November 6, 2014 Motion to Dismiss.

Defendants' November 6, 2014 motion to dismiss (DE 9)[6] related to the original, September 25, 2014 complaint (DE 1). However, as noted above, Plaintiffs filed an amended complaint (DE 15) on November 12, 2014, and "an amended complaint supercedes all prior complaints." *Drake v. City of Detroit, Michigan*, 266 F.App'x 444, 448 (6th Cir. 2008).

---

[5] *E.g.*, references to Defendants' "perverted use of the legal procedure[,]" DE 15 at 5 ¶ 36; allegedly performing "acts of domestic terrorism." DE 15 ¶ 13; DE 21 at 2; "treacherous actions by the [D]efendants to undermine this [C]ourt process[,]" DE 21 at 3; Defendants' alleged plan to carry out "acts of indecency" DE 15 ¶ 12, *etc*.

[6] In their December 2, 2014 response (DE 21), Plaintiffs take issue with Defendants' November 6, 2014 certificate of service (DE 9 at 26). Plaintiffs appear to claim that Defendants' November 6, 2014 motion (DE 9) was not postmarked until November 11, 2014 and was not received by them until approximately November 14, 2014. According to Plaintiffs, "[t]his is yet another display of the underhanded and treacherous actions by the defendants to undermine this court process." DE 21 at 2-3.

Plaintiffs' original complaint (DE 1) having been superceded by an amended complaint (DE 15), the Court should deny as moot Defendants' previously filed motion to dismiss (DE 9).[7]

### F.     The Court Should Grant Defendants' November 25, 2014 Motion to Dismiss.

In their amended complaint, Plaintiffs allege that Defendants are "responsible for the unlawful sale of the Beys['] family home at a Wayne County Sheriffs sale[,]" and "threatening to have the Beys thrown out of their home."  DE 15 ¶¶ 8, 9.  Moreover, Plaintiffs allege, "Defendants are also threatening to have the Beys['] possessions removed and placed into an unsanitary garbage container(s) at their own home where their things can be stolen and/or damaged."  DE 15 ¶ 10.  According to Plaintiffs, "Defendants have failed to prove any legal claim to the property which belongs to the Beys and yet plan to carry out the above mentioned acts of indecency."  DE 15 ¶ 12.

Plaintiffs' causes of action are pleaded in the following enumerated counts: (I) violation of 42 U.S.C. § 1983; (II) conspiracy as set forth in 42 U.S.C. §§ 1983,

---

[7] Here, the undersigned notes that Plaintiff Antonio Bey's September 25, 2014 Affidavit of Facts, which was attached to the original complaint (*see* DE 1 at 10-12), was not attached to the amended complaint (*see* DE 15).  However, it is referred to in Defendants' November 25, 2014 motion to dismiss (*see* DE 18 at 14).  Therefore, it has been considered in the drafting of this report and recommendation.

1985; (III) malicious abuse of process; (IV) intentional infliction of emotional distress; (V) fraud and misrepresentation; (VI) trespass; and (VII) mail fraud.

**1.      Plaintiff's Federal Law Claims Should be Dismissed (Counts I, II & VII).**

**a.      Plaintiffs have failed to state a claim for relief under 42 U.S.C. § 1983.**

Generally, Plaintiffs allege that "[a]ll of the procedures performed by the Defendant were done with codes and statutes which are under the color of law." DE 15 ¶ 17.  Specifically, Plaintiffs allege that "[a]cting under the color of law, Defendants conspired to deny the Beys rights, privileges, and immunities secured by the United States Constitution . . . by Federal Law."  DE 15 ¶ 21.  Citing *Johnson v. Zerbst*, 304 U.S. 458 (1938), Plaintiffs allege that "Defendants conspired for the purpose of impeding and hindering the due course of justice, with the intent to deny the Beys equal protection of laws."  Also, citing *Smith v. Wade*, 461 U.S. 30 (1983), Plaintiffs acknowledge that "a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others."  *Smith*, 461 U.S. at 56; DE 15 ¶ 22.

As this Court is well-aware, 42 U.S.C. § 1983 reads as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citing cases). "[I]n general, neither litigants nor their counsel are 'state actors' for purposes of stating a viable § 1983 claim merely because they are making use of the state's courts and/or its laws." *Miller v. Countrywide Home Loans*, 747 F.Supp.2d 947, 954 (S.D. Ohio 2010). *See also Washington v. Lomas & Nettleton Co.*, No. 84-1715, 1985 WL 12949, 1 (6th Cir. Feb. 13, 1985) (where plaintiff challenged defendant's foreclosure of his mortgage, "there is no showing of state action.").

Plaintiffs have not stated a 42 U.S.C. § 1983 claim upon which relief may be granted. Even though Plaintiffs allege that Defendants LNV and MGC have acted under color of law, LNV and MGC are not state actors, *i.e.*, they are not

governmental entities or agents thereof.  LNV and MGC are private entities.

Moreover, Plaintiffs have not argued that "the activities of these private actors can

be attributed to the state . . . ."  *Elsman v. Standard Federal Bank*, 46 F.App'x 792,

798 (6th Cir. 2002).  Nor could they plausibly do so, under the facts alleged here.

### b.   Plaintiffs have not stated a claim for mail fraud.

Plaintiffs allege that "Defendants intentionally and fraudulently sent

correspondence via U.S. Mail to the Beys home pertaining to the unlawful s[ale] of

their home."  DE 15 ¶ 65.  They also claim that "[t]he unlawful sale of the Beys

home [is] part of a scheme to defraud the Beys."  DE 15 ¶ 66.  Plaintiffs' claim of

mail fraud is based upon alleged violations of 18 U.S.C. § 1341 ("Frauds and

swindles") and 18 U.S.C. § 1342 ("Fictitious name or address").  Plaintiffs'

responses assert that Defendants are guilty of "securitization crimes" (DE 20 at 3 ¶

I), appear to assert that Defendant(s) is (are) engaging in "domestic terrorism" (DE

21 at 2), and further assert that Defendants "have sent unlawful documentation to

the Beys through the [USPS] which puts their actions under international law[,]"

DE 20 at 5 ¶ VIII.  Plaintiffs also maintain that Defendants "submitted false

documentation to this court regarding documents being sent allegedly at times

which blatantly mislead the court in order to institute denial of due process for the

Beys."  DE 20 at 5 ¶ VIII, DE 23 at 4 ¶ 7.

Citing Plaintiffs' references to "unlawful documentation," "securitization crimes," and "domestic terrorism," Defendants take the position that "[t]hese delusional accusations further emphasize that Plaintiffs lack any basis for their lawsuit."  DE 22 at 2-3.  More importantly, the Court should rest its decision as to Plaintiff's mail fraud claim on the basis that, as Defendants urge (DE 18 at 23), "a private cause of action does not exist under the Mail Fraud Statute . . . ."  *Ryan v. Ohio Edison Co.*, 611 F.2d 1170, 1179 n.9 (6th Cir. 1979).  This is dispositive and requires dismissal of the claim.

### c.    Plaintiffs have not stated a claim for conspiracy.

Plaintiffs' conspiracy count cites 42 U.S.C. § 1983 ("Civil action for deprivation of rights") and Subsections (2) and (3) of 42 U.S.C. § 1985 ("Conspiracy to interfere with civil rights").  DE 15 at 4-5.  These three bases for a conspiracy claim will be addressed individually.

### i.    42 U.S.C. § 1985(3)

"Section 1985(3) prohibits a conspiracy 'for the purpose of depriving either directly or indirectly, any person or class of persons of the equal protection of the laws or of equal privileges and immunities under the laws.'" *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005) (quoting 42 U.S.C. § 1985).  As to this statute, the Sixth Circuit has instructed:

> To establish a civil conspiracy under the statute, the claimant must show that (1) "two or more persons ... conspire[d]" (2) "for the purpose of depriving ... [the claimant] of the equal protection of the laws" due to racial or class-based animus and that the conspirators (3) committed an act "in furtherance of the object of such conspiracy" (4) that "injured" the claimant.

*Maxwell v. Dodd*, 662 F.3d 418, 422 (6th Cir. 2011) (citing 42 U.S.C. § 1985(3),

*United Bhd. of Carpenters, Local 610 v. Scott,* 463 U.S. 825, 828–29 (1983)).

In their conspiracy cause of action, Plaintiffs allege that Defendants "have constantly obstructed justice[,]" and "conspired together to steal the Bey home and to deprive the Beys the chan[c]e to save their home by means of denying financing."  DE 15 ¶¶ 24, 28.  Plaintiffs allege intimidation (DE 15 ¶ 25), deprivation of rights and privileges (DE 15 ¶ 26), and the absence of an opportunity to make their case in court (DE 15 ¶ 27).  Also, this cause of action is based upon Defendants' alleged "unlawful sale of the Beys['] home."  DE 15 ¶¶ 29, 30 & 31.[8]  However, these allegations do not state a cause of action under 42 U.S.C. § 1985(3).

First, as Defendants point out, these statements do not include an allegation that Defendants' actions "were motivated by animus based on Plaintiffs' race or

---

[8] The Court acknowledges, as noted by Plaintiffs (DE 15 ¶ 32), that "[a] conspiracy and the substantive offense that is its target are 'separate and distinct offenses.'" *United States v. Powell*, 632 F.2d 754, 757 (9th Cir. 1980) (quoting *Pinkerton v. United States*, 328 U.S. 640, 643 (1946); *United States v. Wylie*, 625 F.2d 1371 at 1371, 1381 (9th Cir. 1980)).

other class-based status." DE 18 at 18. As the United States Supreme Court has instructed, "[t]he language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971) (emphasis in original).

In their response, Plaintiffs claim that Defendants "refused to negotiate with the Beys so that they could have an affordable mortgage payment because of the color of their skin and because their last name is Bey." DE 20 at 3 ¶ I, DE 23 at 3 ¶ 6. Moreover, Plaintiffs respond that "Beys in this country are all lumped into one group and are treated badly because of the conduct of 'prison Beys' or 'dirty moors'[,]"[9] and that "defendant did not make any effort to work with the Beys because of their race . . . ." DE 20 at 3 ¶ III, DE 23 at 2 ¶ 2. Plaintiffs also state that Defendants "destroyed the Beys credit which made it impossible to obtain any financing in order to save their home f[ro]m the unlawful sheriff's sale." DE 20 at 3-4 ¶ III. In reply, Defendants note, "[a]lthough it is unfortunate that Plaintiffs feel that their last name carries such negative connotations, this paranoia cannot support a claim for conspiracy or any other cause of action." DE 22 at 3.

---

[9] By way of background, Attachment A of the Michigan Department of Corrections Policy Directive 05.03.150A identifies the Moorish Science Temple of America as a recognized religious group authorized to conduct group religious services/activities. *See* MDOC PD 05.03.150A, effective Jan. 22, 2015, p. 2.

Notwithstanding the Beys' reference to their race and indirect reference to their religion in their responses, the instant motion (DE 18) is a motion to dismiss Plaintiff's November 12, 2014 amended complaint (DE 15) pursuant to Fed. R. Civ. P. 12(b)(6).  *See* DE 18 at 2, 15-17.  "A complaint will be dismissed pursuant to Rule 12(b)(6) if no law supports the claim made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief."  *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F.App'x 485, 487 (6th Cir. 2014) (citing *Twombly,* 550 U.S. at 561–64). Plaintiff is the master of his complaint and, among other things, must put forth allegations with respect to the elements of his causes of action.  *See, i.e., In re Omnicare, Inc. Securities Litigation*, 769 F.3d 455, 467 (6th Cir. 2014) ("to maintain its suit, KBC must put forth either direct or inferential allegations [in the complaint] with respect to all material elements necessary to sustain a recovery under some viable legal theory.") (citations and quotations omitted).  The amended complaint does not contain an allegation regarding race or other class-based animus.

Second, many of Plaintiffs' conspiracy allegations are conclusory.  Plaintiffs respond that Defendants "perpetuated a situation where they conspired to get money from the Beys for years, make payment demands that could not be met and then embezzle their home from them[,]" and that  "The defendant[s] did not make

17

any effort to work with the Beys . . . because the defendants were conspiring to take away their home."  DE 20 at 3 ¶ III, DE 23 at 2 ¶ 2.  However, "[i]t is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983."  *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Third, Plaintiffs have not alleged the violation of a federal constitutional right.  "[A] plaintiff must point to an independent right derived from a constitutional source before a § 1983 or § 1985(3) claim may proceed independently."  *Pinelo v. Northern Kentucky University*, No. 96-5765, 1998 WL 165136, 2 (6th Cir. Mar. 31, 1998).  "Section 1985(3) provides a means of redressing a conspiracy to deprive an individual of rights guaranteed under the Constitution.  Like section 1983, section 1985(3) provides no independent substantive protections."  *Seguin v. City of Sterling Heights*, 968 F.2d 584, 590 (6th Cir. 1992).  *See also Griggs v. National R.R. Passenger Corp., Inc.*, 900 F.2d 74, 76 (6th Cir. 1990) (citing *Great American Federal Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 376 (1979)).

"[T]o fall within the remedial purview of § 1985(3), a plaintiff must allege that he has suffered the violation of a right.  Whether this requires a showing of state action will turn on the nature of the predicate right:  if the right exists as

against all actors, private as well as state, then no showing of state action is required.  If, on the other hand, the violation alleged is of a right protected only against state interference, such as the rights guaranteed under the Fourteenth Amendment, then the corresponding level of state action must be proven." *Volunteer Medical Clinic, Inc. v. Operation Rescue*, 948 F.2d 218, 226 (6th Cir. 1991).

Thus, since Plaintiffs argue in their response that Defendants have conspired to illegally or unlawfully deprive them of their home because of their race and/or religion, in contravention of the Fourteenth Amendment's Equal Protection Clause, they are necessarily required to prove state action.  As noted above, Defendants in this case are private entities, not state actors.  Moreover, as discussed below, Plaintiffs have not enumerated a cause of action based on the Fourteenth Amendment.  In fact, of Plaintiffs' seven (7) enumerated counts, only three (3) are based upon federal law, of which only the 42 U.S.C. § 1983 claim alleges deprivation of constitutional rights.  Plaintiffs having failed to state a claim for deprivation of constitutional rights under 42 U.S.C. § 1983 (Count 1), their claim for conspiracy under 42 U.S.C. § 1985(3) (Count 2) fails as well.

### ii. **42 U.S.C. § 1985(2)**

"To establish a conspiracy claim under 42 U.S.C. § 1985(2), a plaintiff must prove three elements: (1) a conspiracy, (2) to deter attendance in court or

testimony by force or intimidation or to injure a witness for having appeared in court or testified, and (3) injury to the plaintiff." *Hogan v. Winder*, 762 F.3d 1096, 1113 -1114 (10th Cir. 2014). Although Plaintiffs allege that they "were not given the opportunity to go before any court to plead their case[,]" and that their "home was sold through an administrative process that did not allow the Beys the opportunity to present themselves in court[,]" *see* DE 15 ¶ 27, 42, the claims of obstruction and intimidation within their conspiracy claim (DE 15 ¶¶ 24-25) are vague and conclusory, and provide no specific allegation as to whether or how Defendants "deterred attendance in court or testimony by force or intimidation or to injure a witness for having appeared in court or testified." Even the liberal construction required by notice pleading and Rule 12's standard of review has its limits. 2 *Moore's Federal Practice* (3d Ed.), §12.34[1][b]. "[C]onclusory allegations or legal conclusions are not entitled to the assumption of truth." *Id.* The Court requires more than mere legal conclusions, and need not accept their truth or baseless factual inferences in considering a motion to dismiss for failure to state a claim. *In re Sofamor Danek Group, Inc.,* 123 F.3d 394, 400 (6th Cir. 1997). Moreover, this allegation appears to be contradicted by the pendency of the above-mentioned state court case, of which the Court has taken judicial notice. *See, Buck v. Thomas M. Cooley Law School*, 597 F.3d 812, 816 (6th Cir. 2010) (on motion to dismiss based on *res judicata*, court could take judicial notice of other court

20

proceedings without converting motion into one for summary judgment); *Winget v. JP Morgan Chase Bank, N.A.,* 537 F.3d 565, 576 (6th Cir. 2008) (in resolving 12(b)(6) motion to dismiss, court may take judicial notice of public records, including judicial proceedings and opinions).  Notwithstanding their allegations here, they do appear to be getting their day in court elsewhere.  *See* Case No. 14-B-3148, 33rd District Court, Woodhaven.

### iii.   **42 U.S.C. § 1983**

Section 1983 does not make use of the word "conspiracy."  Still, the Sixth Circuit has explained that "[t]he elements of a civil conspiracy under Section 1983 are 'that (1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed.'" *Womack v. Conley*, 595 F.App'x 489, 494 (6th Cir. 2014) (quoting *Revis v. Meldrum,* 489 F.3d 273, 290 (6th Cir.2007)).  Thus, if Plaintiffs intended to allege a 42 U.S.C. § 1983 civil conspiracy cause of action, such a claim would still fail; as discussed above, Plaintiffs have not alleged a violation of their constitutional rights.

### 2.   **The Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims.**

Plaintiff's four (4) remaining claims (malicious abuse of process, intentional infliction of emotional distress, fraud and misrepresentation and trespass) are all

based upon state law.  Pursuant to 28 U.S.C. § 1367, "The district courts may

decline to exercise supplemental jurisdiction over a claim under subsection (a) if--

> **(1)**      the claim raises a novel or complex issue of State law,
>
> **(2)**      the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> **(3)**      the district court has dismissed all claims over which it has original jurisdiction, or
>
> **(4)**      in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

Thus, if the Court agrees with the foregoing recommendations that Plaintiff's

federal law claims do not survive this motion to dismiss, in other words, if the

Court dismisses all claims over which it has original jurisdiction, then it is

recommended that the Court decline to exercise supplemental jurisdiction over

Plaintiff's state law claims.  This conclusion is particularly appropriate where, as

here, it appears that the state court case is ongoing and provides a more appropriate

forum in which to litigate Plaintiffs' causes of action based upon state law.  This is

also a more judicially efficient approach.


> **3.**      **Plaintiffs' complaint does not enumerate or articulate claims under The Truth in Lending Act (TILA), Michigan Consumer Protection Act (MCPA) or Due Process Clause of the Fourteenth Amendment**

Plaintiffs' responses make *passing reference* to what the Court assumes to

be the federal TILA (15 U.S.C. §§ 1601-1667f), the MCPA (Mich. Comp. Laws §§

445.901, *et seq.*) and the Fourteenth Amendment right to due process.  *See* DE 20

at 3 ¶ I, DE 21 at 2, DE 23 at ¶¶ 1, 5-6.  For example, in their response, Plaintiffs

state, "[t]he original loan may have been assigned to defendants but doing so is a

clear violation of the Beys rights.  Upon the defendants taking over the mortgage,

the mortgage climbed exponentially which not only violates the terms of the

agreement but also violates the Michigan Truth in Lending Act."[10] DE 20 at 3 ¶ I,

DE 23 at 3 ¶ 6.  According to Plaintiffs, their "mortgage payments at [inception]

were around $875 but climbed to around $2800 while dealing with the

defendants."  DE 20 at 3 ¶ III.  Also, Plaintiffs' response states, "[t]he Fourteenth

Amendment secures the right to due process which the Beys have been clearly

denied."  DE 23 at 3 ¶ 5.

     The undersigned does not address whether Plaintiffs have stated TILA,

MCPA claims and/or a Fourteenth Amendment due process claim upon which

relief may be granted.  This is so, because, although Plaintiff *attests* that he was

told he "would be able to refinance in the future for [a] better interest rate[,]" DE 1

at 10 ¶ 8, and although the amended complaint *generally* alleges that Plaintiffs

were deprived of a constitutionally protected property interest in violation of the

Fourteenth Amendment due process clause (DE 15 ¶ 6), neither the TILA, nor the

---

[10] This report assumes that Plaintiffs are referring to the federal Truth in Lending
Act (TILA), codified at 15 U.S.C. §§ 1601-1667f.  This is so, because, in defining
"[s]tate and federal laws," Michigan's Consumer Mortgage Protection Act (Mich.
Comp. Laws §§ 445.1631 – 445.1645), cites the "truth in lending act" as 15 U.S.C.
§§ 1601-1667f.  *See* Mich. Comp. Laws § 445.1632(h).

MCPA, nor the Fourteenth Amendment are enumerated as separate causes of action in the pleadings (*see* DE 15 ¶¶ 19-66).[11]  Here, Plaintiffs knew enough to separate their actual claims into seven distinct counts, pursuant to Fed. R. Civ. P. 10(c).  The Court is entitled to rely upon this in determining what claims are actually being made.  Likewise, the Court and the defendants are entitled to rely upon this in determining what claims need to be defended or addressed.  *See, United States v. School Dist. of Ferndale*, 400 F. Supp. 1122 (E.D. Mich. 1975) (claims seeking distinct remedies must be stated in separate counts to facilitate clear presentation of facts and issues).  *See also, Nemitz v. Cunny*, 221 F. Supp. 571, 575 (N.D. Ill. 1963) ("different causes of action based on different legal theories, even though based on essentially identical facts, should be alleged in separate counts ");*Marlborough Holdings Group, Ltd. v. Azimut-Benetti, Spa, Platinum Yacht Collection No. Two, Inc.*, 505 F.App'x 899, 907 (11th Cir. 2013)

---

[11] The Fourteenth Amendment provides, in part, that no State shall "deprive any person of life, liberty, or property, without due process of law[.]"  U.S. Const. amend. XIV, § 1 (emphasis added).  The Supreme Court has explained, "[p]rocedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property."  *Carey v. Piphus*, 435 U.S. 247, 259 (1978).  Moreover, the Court has noted, "the right to procedural due process is 'absolute' in the sense that it does not depend upon the merits of a claimant's substantive assertions . . . ."  *Carey*, 435 U.S. at 266.  Within their conspiracy and malicious abuse of process claims, Plaintiffs do allege that they were not given an opportunity to make their case in court (*see* DE 15 ¶¶ 27, 42).  However, the amended complaint does not enumerate a separate count alleging a violation of their Fourteenth Amendment right to due process.

(per curiam) (properly drafted pleadings will present each claim in a separate count; district court did not err by declining to consider conspiracy claim that was not properly pleaded as separate count, but was rather pleaded as part of the underlying substantive claim).[12]

### III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 932 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

---

[12] Additionally, as Defendants point out (*see* DE 22 at 4), "the MCPA does not apply to claims arising out of residential mortgage transactions[.]"  *Pettiford v. J.P. Morgan Chase Bank, N.A.,* No. 12-11349, 2013 WL 3724788, *5 (E.D. Mich. July 15, 2013) (Duggan, J.) (quotations and citations omitted); *Jovanovic v. Bank of N.Y. Mellon*, No. 13-11851, 2013 WL 4042613, *5 (E.D. Mich. Aug. 9, 2013) (Edmunds, J.) ("the MCPA does not apply to residential home mortgages.").

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: May 22, 2015              s/Anthony P. Patti
                                 Anthony P. Patti
                                 UNITED STATES MAGISTRATE JUDGE

I certify that a copy of this document was sent to parties of record on Friday, May 22, 2015, electronically and/or by U.S. Mail.

                                 s/Michael L. Williams
                                 Case Manager to the
                                 Honorable Anthony P. Patti