UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTONIO BEY and RENEE SMITH-BEY,

    Plaintiffs,

                Case Number 14-13723
v.                Honorable David M. Lawson
                Magistrate Judge Anthony P. Patti

LVN CORPORATION, and
MGC MORTGAGE, INC.,

    Defendants.

_____/

**OPINION AND ORDER ADOPTING IN PART REPORT AND RECOMMENDATIONS, OVERRULING PLAINTIFFS' OBJECTIONS, GRANTING MOTION TO DISMISS, AND DISMISSING AMENDED COMPLAINT WITH PREJUDICE**

    Plaintiffs Antonio Bey and Renee Smith-Bey filed a seven-count complaint alleging claims under federal and state law against defendants LVN Corporation and MGC Mortgage, Inc. based on the defendants' actions in foreclosing the mortgage on the plaintiffs' home. The complaint, which was followed by an amended complaint, both filed *pro se*, contains claims based on 42 U.S.C. § 1983, 42 U.S.C. § 1985, malicious abuse of process, intentional infliction of emotional distress, fraud and misrepresentation, trespass, and mail fraud. The Court referred this case to Magistrate Judge Anthony P. Patti for pretrial management. Thereafter, the defendants filed a motion to dismiss the complaint, and then a motion to dismiss the amended complaint. Judge Patti filed a report on May 22, 2015 recommending that the first motion be denied as moot and the second motion be granted. The plaintiffs filed timely objections, and the matter is before the Court for *de novo* review. After considering the motions, the pleadings, and the magistrate judge's report in light of the objections filed, the Court finds that the magistrate correctly determined the issues. Therefore, the Court will adopt the report and recommendation in part and dismiss the case.

I.

Both the complaint and the amended complaint are sparse on actual facts, but they are rich in legal theories, conclusions, and hyperbole.  However, the complaint is accompanied by an exhibit entitled "Affidavit of Facts," which fills in much of the factual detail customarily included in a complaint under Federal Rule of Civil Procedure 8.  The amended complaint contains no such attachment, but because pleadings from *pro se* filers generally are accorded considerable latitude, *Haynes v. Kerner*, 404 U.S. 519, 520 (1972), the Court will presume that the plaintiffs intended to include the "Affidavit of Facts" with the amended complaint as well.

The complaints and motion papers tell a story of a family that, when refinancing their home loan, felt the full impact of the financial crisis of 2008, which adversely affected property values and consumer loans across the country.  The Beys purchased their home in Brownstown Township, Michigan in 2005, financing it with a promissory note secured by an adjustable rate mortgage. When their payment tripled withing two years, the Beys refinanced their home in the summer of 2006 with another adjustable rate note to Decision One Mortgage Company and a mortgage in favor of Mortgage Electronic Registration Systems, Inc. (MERS).  On March 10, 2006, MERS assigned the mortgage to defendant LVN Corporation and received by defendant MGC Mortgage, which shares an address with LVN.

Bey, who was employed as a firefighter, saw his interest rate — and his house payment — rising again, along with fuel prices and other household expenses.  But with decreasing property values, Bey's options were limited and he was unable to refinance again.  He explored the prospect of a loan modification; during that process, his loan was sold again and acquired by GMAC.  He

-2-

says he submitted documents to GMAC seeking a loan modification, but during that process his loan was transferred again, this time to defendant MGC.

Bey says he was concerned about his home being foreclosed, and he was able to bring his loan current, apparently by signing a repayment agreement with GMAC, after GMAC had commenced foreclosure proceedings. But he received a pay cut, presumably because he was not able to work the overtime he was accustomed to in the past. He again requested a loan modification. He also consulted with an attorney, Steven Ruza, who was supposed to have been negotiating for the loan modification. Although the plaintiffs do not say as much, their loan must have become delinquent again, as they acknowledge that the defendants commenced non-judicial foreclosure proceedings while the loan modification request was pending. Attorney Ruza turned out to be no help at all, as he was charged by the Michigan Attorney General with fraud based on the work he supposedly was doing for the plaintiffs and others.

The Beys tell an unfortunately familiar story of their ill-fated loan modification attempt. They say that they furnished requested documentation, only to be contacted by MGC stating that the documents were missing or incomplete, and with demands for the same documents. They say that the foreclosure proceedings were occurring at the same time that their modification request was pending. A foreclosure sale took place on March 27, 2014, with a redemption period expiring on September 27, 2014. The defendants were the purchasers and received a sheriff's deed.

The plaintiffs filed their lawsuit two days beforehand. After the redemption period expired, the defendants commenced eviction proceedings in the state district court. The plaintiffs attempted to remove that case to this Court, but I remanded the case for want of subject matter jurisdiction.

It appears that the eviction case is still pending, with the plaintiffs making escrow payments and remaining in their home for the time being.

The complaint contains seven counts: violation of 42 U.S.C. § 1983 (count 1);  conspiracy to violate 42 U.S.C. §§ 1983 and 1985 (count 2);  malicious abuse of process (count 3); intentional infliction of emotional distress (count 4); fraud and misrepresentation (count 5); trespass (count 6); and mail fraud (count 7).  The complaint is signed only by Antonio Bey.  The defendants responded with a motion to dismiss.  The Beys filed an amended complaint, which corrected the names of the defendants and was signed also by Renee Smith-Bey, but is otherwise identical to the original complaint.  The defendants responded to that pleading with another motion to dismiss.

The magistrate judge filed a report recommending that the section 1983 claims be dismissed because the plaintiffs did not allege that the defendants were state actors; the plaintiffs did not plead facts establishing a conspiracy in count 2; the federal mail fraud statute does not create a private right of action, so count 7 should be dismissed; and the Court should decline to exercise supplemental jurisdiction over the state law claims.  He also reasoned that the amended complaint superseded the original complaint, so the first motion to dismiss should be denied as moot, but the second motion should be granted.  As noted above, the plaintiffs filed timely objections to the report and recommendation.  The defendants filed a response to those objections, and the plaintiffs filed a lengthy reply.

## II.

The filing of timely objections to a report and recommendation requires the court to "make a *de novo* determination of those portions of the report or specified findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667

-4-

(1980); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). This *de novo* review requires the court to re-examine all of the relevant evidence previously reviewed by the magistrate judge in order to determine whether the recommendation should be accepted, rejected, or modified in whole or in part. 28 U.S.C. § 636(b)(1).

"The filing of objections provides the district court with the opportunity to consider the specific contentions of the parties and to correct any errors immediately," *Walters*, 638 F.2d at 950, enabling the court "to focus attention on those issues — factual and legal — that are at the heart of the parties' dispute," *Thomas v. Arn*, 474 U.S. 140, 147 (1985). As a result, "'[o]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have.'" *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006) (quoting *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987)).

The Court has reviewed the pleadings, the report and recommendation, and the plaintiffs' and defendants' submissions and has made a *de novo* review of the record in light of the parties' submissions.

## A.  Section 1983 Claims

The plaintiffs object to the magistrate judge's determination that the defendants were not acting under color of state law as required by 42 U.S.C. § 1983, quoting language from *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288 (2001), which held that a private actor can be considered a person acting under color of state law when his conduct is "fairly attributable" to the state. The plaintiffs identify the three primary tests to determine whether such

conduct exists.  They also state that the Privileges and Immunities Clause of Article IV of the Constitution gives them the right to acquire and possess all kinds of property.

It is well recognized that the Constitution protects citizens from infringement of their rights by the government, not by private parties.  *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978) (recognizing that "most rights secured by the Constitution are protected only against infringement by governments") (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 349 (1974); *Civil Rights Cases*, 109 U.S. 3, 17-18 (1883)).  Therefore, in order for liability to attach under section 1983, "the party charged with the deprivation must be a person who may fairly be said to be a state actor.  This may be because he is a state official, because he has acted together with or has obtained significant aid from state officials, or because his conduct is otherwise chargeable to the State."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).

The only information in the pleadings in this case suggests that the defendants are private corporations or associations, and their employees are private actors as well.  However, there are exceptions to the state action requirement.  And although the Supreme Court has acknowledged that its "cases deciding when private action might be deemed that of the state have not been a model of consistency," *Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614, 632 (1991) (O'Connor, J., dissenting), the exceptions tend to fall into two broad categories: the "public function exception," and the "entanglement exception."  *See* Chemerinsky, *Constitutional Law* at 552 (3d ed. 2009).  The Sixth Circuit has "recognized as many as four tests to aid courts in determining whether challenged conduct is fairly attributable to the State: (1) the public function test; (2) the state compulsion test; (3) the symbiotic relationship or nexus test; and (4) the entwinement test." *Marie v. Am. Red Cross*, 771 F.3d 344, 362 (6th Cir. 2014) (citations omitted).

-6-

Under the public function exception, a private actor can be held accountable for a constitutional violation when it exercises "powers traditionally exclusively reserved to the State." *Jackson*, 419 U.S. at 352.  Under that exception, the Court has found constitutional liability against private entities administering elections, *Terry v. Adams*, 345 U.S. 461 (1953); *Smith v. Allwright*, 321 U.S. 649 (1944); *Nixon v. Condon*, 286 U.S. 73 (1932); operating a "company town," *Marsh v. Alabama*, 326 U.S. 501 (1946); and administering private property used for a public purpose, *Evans v. Newton*, 382 U.S. 296 (1966).  There are no known examples of private mortgage lenders engaging in the state-approved practice of foreclosure by publication being found to have exercised "powers traditionally exclusively reserved to the State."  They cannot be found to be state actors under the public function test.

Under the entanglement exceptions (which fairly can be seen to include the so-called state compulsion test, the symbiotic relationship or nexus test, and the entwinement test), a private entity may be found to be a state actor if the state has affirmatively authorized, encouraged, or facilitated the private unconstitutional conduct, or otherwise permitted a private actor to "exercise[] power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'"  *West v. Atkins*, 487 U.S. 42, 49 (1988) (finding a private physician under contract with state to provide medical services to prison inmates was a state actor) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).  Within this exception, state action by private parties has been found when the executive or judicial arm of state government has provided assistance in perpetrating unconstitutional conduct.  *See, e.g.*, *Shelley v. Kraemer*, 334 U.S. 1 (1948) (state action found where a private party resorted to state courts to enforce discriminatory private deed restrictions); *Burton v. Wilmington Parking Auth.*, 365 U.S. 715 (1961) (finding state action based

-7-

on the symbiotic relationship between a restaurant and a publicly-run parking facility leasing property to the restaurant); *North Ga. Finishing, Inc. v. Di–Chem, Inc.*, 419 U.S. 601 (1975) (using state courts and bailiffs to enforce creditor's remedies lacking in procedural due process); *Fuentes v. Shevin*, 407 U.S. 67 (1972) (same); *Sniadach v. Family Finance Corp.*, 395 U.S. 337 (1969) (same). However, neither authorization of private conduct by law, *Flagg Bros.*, 436 U.S. at 164-65, nor restriction by licensure or regulation alone, *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163 (1972), will be sufficient to constitute state action. Instead, the Supreme Court has held that "a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) (holding that decisions of physicians and administrators of a privately owned and operated nursing home to transfer Medicaid patients is not state action); *see also Rendell–Baker v. Kohn*, 457 U.S. 830, 840 (1982) (employment discharge decisions of a privately owned and operated school receiving nearly all revenue from state contracts is not state action).

The plaintiffs cite *Brentwood Academy v. Tennessee Secondary School Athletic Association*, 531 U.S. 288, 300 (2001), the Supreme Court's entanglement case originating in this circuit, in support of their arguments. In that case, the Supreme Court found that a private state association that regulated nearly all of the state's high school athletic competitions engaged in state action when it suspended a private school from interscholastic playoff competition for a rules violation. The Court found that the private association was a state actor because of "the pervasive entwinement of state school officials in the structure of the association." *Id.* at 291. However, the Court found no entanglement in a similar case involving the National Collegiate Athletic Association, which

-8-

performed the nearly identical function regulating intercollegiate athletics on a national scale. *NCAA v. Tarkanian*, 488 U.S. 179, 199 (1988). The difference may be this: in *Brentwood Academy*, eighty-four percent of the TSSAA's members were public schools (the other members were private schools); the TSSAA was operated by two committees, the legislative council and the board of control; the members of the committees were administrators from the member schools; the TSSAA enacted rules that its member schools were required to follow; all the members of the board of control were administrators from public schools; its employees were eligible under the state retirement system; and for decades the state board of education had delegated to the TSSAA the duty of "providing standards, rules and regulations for interscholastic competition in the public schools of Tennessee." *Brentwood Academy*, 531 U.S. at 292. Because of all of this, the Court concluded that "[t]he nominally private character of the Association is overborne by the pervasive entwinement of public institutions and public officials in its composition and workings, and there is no substantial reason to claim unfairness in applying constitutional standards to it." *Id.* at 298.

The mere citation of *Brentwood Academy* provides no support for the plaintiffs' state action argument, however. It is one thing to cite legal principles. However, when submitting a complaint to a federal court, the plaintiff is obliged to include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Conclusory allegations, particularly those dealing with state action by the defendants, will not suffice. *Marie v. American Red Cross*, 771 F.3d 344, 361-62 (6th Cir. 2014). As the *Brentwood Academy* opinion demonstrates, the determination whether a private entity is a state actor is a highly fact-bound inquiry.

The plaintiffs have not alleged facts showing that the defendants are state actors, or have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State." 42 U.S.C. § 1983. Therefore, the magistrate judge correctly recommended that their claims based on section 1983 should be dismissed.

### B. Conspiracy Claim Based on 42 U.S.C. §§ 1983, 1985

The plaintiffs object to the magistrate judge's recommendation that the defendants should not be held liable for conspiracy. They reiterate that the defendants obstructed justice, they have been "deprived of having and exercising any right or privilege as a citizen of the United States[,]" the defendants refused to accept any partial payments, and the defendants refused to come to a reasonable agreement to let them keep their home. Pls.'s Obj. at 7. The plaintiffs also quote section 1985, reiterating their claim that the defendants conspired against them and that they are owed damages as a result.

As mentioned, the plaintiffs have not alleged that the defendants are state actors, and they have not alleged that the defendants conspired with state actors. Therefore, their conspiracy claim based on section 1983 must fail.

"To succeed in establishing a § 1985(3) claim, the plaintiff must demonstrate '(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges or immunities of the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.'" *Center for Bio–Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 832 (6th Cir. 2007) (quoting *Vakilian v. Shaw*, 335 F.3d 509, 518 (6th Cir. 2003)). "A § 1985(3) complaint must 'allege both a conspiracy and some

-10-

class-based discriminatory animus behind the conspirators' action.'" *Ibid.* (quoting *Newell v. Brown*, 981 F.2d 880, 886 (6th Cir.1992)).

As the magistrate judge observed, there are no allegations in the amended complaint that suggest that the plaintiffs are members of a discrete class or that the defendants' actions were based on class-based animus. In their motion response, the plaintiffs make reference to the defendants' refusal to negotiate with them because their last name is Bey and because of their skin color. The significance of the name "Bey" is not readily apparent, and it certainly does not lend a clue as to how it might provoke discrimination. And there is nothing in the record that indicates what the plaintiffs' actual skin color is, or how the defendants knew of it or were motivated by it. The plaintiffs' arguments to the contrary are implausible. "Plausibility requires showing more than the 'sheer possibility' of relief but less than a 'probab[le]' entitlement to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)." *Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir. 2010).

Whether proceeding under 42 U.S.C. § 1985 or for civil conspiracy under § 1983, a plaintiff must allege some evidence of coordinated actions between the alleged conspirators. *See Bass v. Robinson*, 167 F.3d 1041, 1050 (6th Cir. 1999); *Collyer*, 98 F.3d at 229. Conclusory, vague accusations that do not describe some "meeting of the minds" cannot state a claim for relief under 42 U.S.C. §§ 1983 or 1985. *See Naguib v. Ill. Dep't of Prof'l Regulation*, 986 F. Supp. 1082, 1092 (N.D. Ill. 1997); *Pollack v. Nash*, 58 F. Supp. 2d 294, 299-300 (S.D.N.Y. 1999). The amended complaint in this case alleges that the defendants "perpetuated a situation where they conspired to get money from the Beys for years, ma[d]e payment demands that could not be met and then embezzle[d] their home from them." But these allegations state no *facts*; they are conclusory and do not suffice to state a claim under section 1985(3). Although the plaintiffs use the provocative

-11-

term "embezzle," their allegations amount to nothing more than that the defendants pressed the point to enforce the terms of the note and mortgage by engaging in legal — although perhaps harsh — conduct. Reading the complaint in its most generous light, one is left with the conclusion that the defendants foreclosed on the home not because of class-based animus, but because the plaintiffs fell behind on their mortgage payments.

The plaintiffs also cite 42 U.S.C. § 1985(2) as a basis for their conspiracy claim. "To sustain a cause of action under 42 U.S.C. § 1985(2), a plaintiff must prove the existence of a conspiracy among 'two or more persons.'" *Doherty v. American Motors Corp.*, 728 F.2d 334, 339 (6th Cir.1984). The purpose of the conspiracy must be to intimidate or injure a witness so as to deter that witness from testifying, and the conspiracy must actually harm the plaintiff. *See Portman v. County of Santa Clara*, 995 F.2d 898, 909 (9th Cir. 1993); *Alexander v. Patterson*, 34 F.3d 1068, 1994 WL 419582, at *1 (6th Cir. Aug. 10, 1994) (Table). The plaintiffs are not required to allege that they suffered an injury to a constitutionally protected property interest in order to state a claim for damages under section 1985(2). *Haddle v. Garrison*, 525 U.S. 121, 125 (1998). But "a [section 1985(2)] claim fails when the complaint does not allege either that the defendant's actions in some way were designed to intimidate or [to] deter the plaintiff from appearing in a judicial proceeding." *Hogan v. Winder,* 762 F.3d 1096, 1113-1114 (10th Cir. 2014).

The plaintiffs allege that they "were not given the opportunity to go before any court to plead their case[,]" and that their "home was sold through an administrative process that did not allow the Beys the opportunity to present themselves in court." Am. Compl. ¶¶ 4, 6. But nowhere do the plaintiffs state any facts as to how the defendants prevented them from appearing before a court.

The plaintiffs' conspiracy claim based on 42 U.S.C. § 1983 fails as well. The Sixth Circuit

has stated that "[t]he elements of a civil conspiracy under section 1983 are 'that (1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed.'" *Womack v. Conley*, 595 F. App'x 489, 494 (6th Cir. 2014) (quoting *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007)). However, as mentioned above, the plaintiffs' claim under this statute fails because the plaintiffs have not alleged a violation of their constitutional rights in any of their pleadings, and the plaintiffs have not shown adequately that the defendants conspired together unlawfully to foreclose on the Beys' home.

### C.  Mail Fraud

The plaintiffs object to the magistrate judge's suggestion that they have stated no claim for mail fraud, arguing that the defendants sent a foreclosure notice to them while the loan modification process was still ongoing. They allege that such conduct is considered "dual tracking" and is considered illegal and fraudulent. The plaintiffs also state that the loan documents they requested and received from the defendants were not legible and that some of the documents appeared not to be genuine according to 18 U.S.C § 1324c, which addresses the penalties for document fraud.

But the plaintiffs have not addressed the part of the magistrate judge's report stating that the mail fraud statute, 18 U.S.C. § 1341, does not create a private right of action. That legal proposition is well established. *Ryan v. Ohio Edison Co.*, 611 F.2d 1170, 1179 (6th Cir. 1979) (stating that "Congress did not intend to create a private cause of action for Plaintiffs under the Mail Fraud Statute" (citing *Cort v. Ash*, 422 U.S. 66, 79-80 (1975))). This objection will be overruled.

### D.  State Law Claims

The plaintiffs alleged claims for malicious abuse of process, intentional infliction of emotional distress, fraud and misrepresentation, and trespass, all based on state law. The magistrate

-13-

judge recommended that the Court not exercise supplemental jurisdiction over those claims, citing 28 U.S.C. § 1367. It is true that under that statute, "district courts may decline to exercise supplemental jurisdiction over a claim" under certain circumstances. 28 U.S.C. § 1367(c); *Gamel v. City of Cincinnati*, 625 F.3d 949, 952 (6th Cir. 2010). However, a careful reading of the amended complaint suggests that the state law claims are not before the Court on supplemental subject matter jurisdiction. Instead, it appears that the plaintiffs have alleged that the citizenship of the plaintiffs and the defendants is diverse, and from the substance of the allegations dealing with the property value and the loan balances, the amount in controversy exceeds $75,000. Therefore, the Court may consider the subject matter jurisdiction to be based on diversity of citizenship. 28 U.S.C. § 1332(a). Section 1367(c) has no application in such circumstances. *See Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 799 (6th Cir. 2012). Therefore, I must reject the magistrate judge's suggestion that the state law claims can be dismissed without prejudice.

### 1. Abuse of Process

To state a claim for abuse of process, a plaintiff must plead facts showing "(1) an ulterior purpose and (2) an act in the use of process which is improper in the regular prosecution of the proceeding." *Friedman v. Dozorc*, 412 Mich. 1, 30, 312 N.W.2d 585, 594 (1981). For an abuse-of-process claim, the misconduct "is not the wrongful procurement of legal process or the wrongful initiation of criminal or civil proceedings; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish." *Id.* at n.18 (quoting Restatement (Second) of Torts § 682 cmt. a (1977)). An "action for the abuse of process lies for the improper use of process after it has been issued, not for maliciously causing it to issue." *Spear v. Pendill*, 164 Mich. 620, 623, 130 N.W. 343, 344 (1911) (quotation marks omitted).

-14-

The plaintiffs allege an ulterior motive by stating that the defendants intended to acquire "the Bey's home by inflating interest rates, depriving the Beys of a way to finance their home, etc." Am. Compl. ¶5. However, the Court "need not decide whether plaintiff's pleadings sufficiently allege that the defendants had an ulterior purpose in causing process to issue, since it is clear that the plaintiff has failed to allege that defendants committed some irregular act in the use of process." *Friedman*, 412 Mich. at 31, 312 N.W.2d at 595. The plaintiffs have not alleged that the defendants committed a procedural impropriety in following Michigan's foreclosure-by-advertisement statute; therefore, their abuse of process claim must be dismissed.

### 2. Intentional Infliction of Emotional Distress

Although the Michigan Supreme Court has not yet recognized the tort of intentional infliction of emotional distress, the Michigan Court of Appeals consistently has done so. *Mroz v. Lee*, 5 F.3d 1016, 1018 (6th Cir. 1993) (collecting cases). "Under Michigan law, a prima facie case for intentional infliction of emotional distress requires the following elements: '(1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress.'" *Ruffin–Steinback v. dePasse*, 267 F.3d 457, 464 (6th Cir. 2001) (quoting *Andrews v. Prudential Secs., Inc.*, 160 F.3d 304, 309 (6th Cir. 1998)). "The outrageous conduct requirement is satisfied only by conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Liability arises, moreover, only where the distress inflicted is so severe that no reasonable man could be expected to endure it." *Andrews*, 160 F.3d at 309 (internal citations and quotations omitted). "It is well accepted that intentional infliction of emotional distress claims may

entirely appropriately be dealt with on summary judgment or in a motion to dismiss." *Miller v. Currie*, 50 F.3d 373, 377–78 (6th Cir. 1995).

The plaintiffs' sole factual allegation to support their claim is that "[t]he defendants threatening letters and phone calls and document games cause insecurity and distress to the Beys." Am. Compl. ¶7. The plaintiffs provide no further detail about these letters and phone calls. No reasonable factfinder could infer from this allegation that the defendants' conduct was "so outrageous in character and so extreme in degree" as to satisfy the first element. Therefore, count 4 will be dismissed.

### 3. Fraud and Misrepresentation

To establish a claim of fraud, the plaintiffs must plead each of the following elements: (1) that the defendant made a material misrepresentation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by the plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury. *Hi-Way Motor Co. v. International Harvester Co.*, 398 Mich. 330, 336, 247 N.W.2d 813, 816 (1976) (quoting *Candler v. Heigho*, 208 Mich. 115, 121, 175 N.W. 141, 143 (1919)). Furthermore, Federal Rule of Civil Procedure 9(b) requires fraud claims to be stated "with particularity." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) ("Rule 9(b) requires that a plaintiff allege the time, place, and content of the alleged misrepresentations on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.").

The plaintiffs have not met this heightened pleading requirement. They allege only that "the Defendants [have] made several claims mentioned in this cause of action that had to be known as

-16-

false but [were] done due to the Defendants' assumption of the Beys ignorance of the law."  Am. Compl. ¶7.  The plaintiffs have not stated any *facts* to support their claim for fraud.  Their allegations as to this count are entirely conclusory.  Therefore, count 5 of the amended complaint must be dismissed.

### 4. Trespass

The plaintiffs argue in their objections that the defendants trespassed on the plaintiffs' property unlawfully when they posted the foreclosure notice on the plaintiffs' home while the loan modification process was occurring.  That does not suffice to state a claim for trespass.  "A trespass is an unauthorized invasion upon the private property of another."  *D'Andrea v. AT&T*, 289 Mich. App. 70, 73, 795 N.W.2d 620, 622 (2010) (citations and quotation marks omitted).  But the defendants cannot be found liable for trespass when they are statutorily required by Michigan law, *see* Mich. Comp. Laws § 600.3208, to post notice "in a conspicuous place upon any part of the premises in the notice."  The plaintiffs' mortgage includes a power of sale, which in turn incorporates the state foreclosure law procedures.  "If a defendant's intrusion onto the plaintiff's private land is authorized by law, there is no trespass."  *Moher v. United States*, 875 F. Supp. 2d 739, 755 (W.D. Mich. 2012).

Perhaps the plaintiffs intend to allege that the trespass took place after the foreclosure sale occurred.  If so, their trespass claim still fails.  They allege that "[t]he defendants took unlawful possession of the Bey's title to their home."  Am. Compl. ¶8.  However, after the expiration of the statutory redemption period, all of the plaintiffs rights and title to the property are extinguished.  *See Bryan v. JPMorgan Chase Bank*, 304 Mich. App. 708, 713 (2014).  They no longer had an interest in the property, and therefore they cannot state a claim that the defendants' trespassed on land they

-17-

no longer own.  Even though the plaintiffs filed this lawsuit two days before the statutory redemption period expired, it is well settled that the filing of a lawsuit is insufficient to toll the redemption period.  *Conlin v. Mortgage Electronic Registration Systems, Inc.*, 714 F.3d 355, 358 (6th Cir. 2013).

### E.  Other Legal Theories

The magistrate judge observed that the plaintiffs made reference in their motion responses to other possible causes of action, including the Truth in Lending Act (TILA), the Michigan Consumer Protection Act (MCPA), and the Due Process Clause of the Fourteenth Amendment. However, none of these claims or legal theories are advanced in the pleadings, that is, in the complaint or amended complaint.  The plaintiffs have identified seven discrete counts in their amended complaint, and in so doing have honored the requirement that "[i]f doing so would promote clarity, each claim founded on a separate transaction or occurrence — and each defense other than a denial — must be stated in a separate count or defense."  Fed. R. Civ. P. 10(b).  There are no counts based on the TILA, the MCPA, or the Due Process Clause.  The magistrate judge quite properly rejected those "claims," such as they are, on the basis that the plaintiffs "should have presented [each of] the claim[s] in a separate count."  *Marlborough Holdings Grp., Ltd. v. Azimut-Benetti, Spa, Platinum Yacht Collection No. Two, Inc.*, 505 F. App'x 899, 907 (11th Cir. 2013) (per curiam).

It appears that the crux of the plaintiffs' objections focus on their protestations that the defendants have engaged in "dual tracking."  "Dual tracking refers to a common tactic by banks that institute foreclosure proceedings at the same time that a borrower in default seeks a loan modification."  *Kloss v. RBS Citizens, N.A.*, 996 F. Supp. 2d 574, 585 (E.D. Mich. 2014) (citing

*Jolley v. Chase Home Finance, LLC*, 213 Cal. App. 4th 872, 153 Cal. Rptr. 3d 546 (2013)). "The result is that the borrower does not know where he or she stands, and by the time foreclosure becomes the lender's clear choice, it is too late for the borrower to find options to avoid it." *Jolley*, 153 Cal. Rptr. 3d at 572.   But as this Court has explained, "Michigan's response to remediate that practice is a statute that requires a lender to wait 90 days before commencing foreclosure proceedings against a borrower who has requested a meeting with the lender." *Boluch v. J.P. Morgan Chase Band*, No. 14-14705, 2015 WL 1952285, at *2 (E.D. Mich. Apr. 29, 2015) (citing Mich. Comp. Laws § 600.3205a(e)).   That provides no solace to the plaintiffs here, however, because "'alleged dual tracking violations relate to the loan modification process rather than the foreclosure process . . . [and] the only remedy for a violation of the loan modification process is a conversion of the foreclosure by advertisement into a judicial foreclosure, which must have occurred before the foreclosure by advertisement was completed." *Ibid.* (quoting *Kloss*, 996 F. Supp. 2d at 585).

III.

The plaintiffs quite understandably are frustrated by their present circumstances involving their efforts to save their home from foreclosure.  The defendants, who hold the note and mortgage, appear to be unyielding.  But the plaintiffs have not alleged that the defendants have committed any acts for which a federal court can provide the plaintiffs with a remedy.

The magistrate judge concluded that the plaintiffs failed to state a claim for which relief can be granted in all of the counts of their amended complaint based on federal law.  He correctly observed that the complaint was superseded by the amended complaint, *see B & H Med., L.L.C. v. ABP Admin., Inc.*, 526 F.3d 257, 268 (6th Cir. 2008) (citing 6 Charles Alan Wright, Arthur R. Miller

-19-

& Mary Kay Kane, *Federal Practice and Procedure* § 1476 (2d ed.1990)), and therefore he recommended correctly that the motion to dismiss the first complaint should be denied as moot.

He also recommended, incorrectly, that the state law claims should be dismissed without prejudice after the Court declines supplemental jurisdiction. Those claims must be dismissed on the merits, instead.

After fresh review of the motions and responses, the report and recommendation, and the plaintiffs' objections, the defendants' response, and the plaintiffs' reply, the Court concludes that the plaintiffs have not stated claims in their amended complaint for which relief can be granted.

Accordingly, it is **ORDERED** that the plaintiffs' objections to the report and recommendation [dkt. #33] are **OVERRULED**, and the magistrate judge's report is **ADOPTED IN PART**, and the recommendation [dkt. #32] is **ADOPTED**.

It is further **ORDERED** that defendants' motion to dismiss the complaint [dkt. #9] is **DENIED AS MOOT**.

It is further **ORDERED** that defendants' motion to dismiss the amended complaint [dkt. #18] is **GRANTED**.

It is further **ORDERED** that the amended complaint is **DISMISSED WITH PREJUDICE**.

s/David M. Lawson                              
DAVID M. LAWSON
United States District Judge

Dated:  July 28, 2015

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 28, 2015.

s/Susan Pinkowski
SUSAN PINKOWSKI